The next case called for oral argument is Worley v. Fender Counsel We're here on two separate issues and I'd like to address both of them. The first issue essentially is whether there was a sufficient selection of underinsured lawyers' coverage that would limit the underinsured coverage available for the claimant to $40,000 as is set forth in the insurance policy itself. And what this boils down to really is a question of what version of the uninsured, uninsured statute, 14382, should we look at in analyzing whether this coverage was sufficient under the law. I'm going to ask you a question about that. In reading the court's order, it seems that the court decided that that wasn't the issue. That the issue was really whether or not there was a valid and knowing rejection. And my question to you is, do both statutes, regardless of when they were passed, require that the insured make a valid and knowing rejection? That was the second part of my argument. Okay, I'm sorry. I disagree with that. I think what the court did is look to the extrinsic evidence as to what was actually discussed and actually, more precisely, what the insured actually remember about a meeting that took place nine years ago. Okay, but my legal question is, regardless of whether it's the 2004 or the 2011 statute, do you believe that both statutes require that there be a knowing and voluntary rejection? I believe what the statutes require is that there be a brief description given to the insurer or the applicant. And that the insurer's brief description includes an explanation that they have a right to choose coverage lower than the liability limit. And then the statute, reading the statute, it says that they may reject additional insurance coverage in excess of those limits. There isn't anything in the statute, after it was amended back in, I believe, 1990, that talks about a meaningful offer being made. I didn't ask about an offer. Okay. I'm asking about whether you believe, whether it's the 2004 or the 2011 statute, that under either circumstance, in order for there to be lower limits, that the insured must make a knowing and voluntary waiver. I don't believe, I mean, the statute doesn't say knowing waiver. What the statute says is that the insurance company has to provide a brief description and give them the option of doing it. I'm not talking about the description. I'm looking for the language of the court. But the language of the court seems to indicate that its finding was that there wasn't a specific rejection. And so I want you to, I'm going to try to get you to answer my question, even though you may not want to. Do you think that both statutes require the insured to make a knowing rejection? A valid, I think the court uses a knowing and valid rejection or selection. Do both of the statutes require that? I don't see the language of a knowing and valid rejection. I mean, I'm just saying what the statute says. My response, I guess, would be paragraph three of the statute, under both the amended version and the old version, said that the original document pertaining to selection is sufficient evidence of the applicant's selection of uninsured motorist coverage limits. And I think the purpose of that is that when you do a court situation like this where a form is signed, you know, nine years ago, and then the insured is questioned about this form. Well, do you remember having a discussion about this, you know, nine years ago? No, I don't remember that happening nine years ago. I think what the statute contemplates is that you have something in writing where the insured selected this limit, and that's sufficient under the statute. And I think that's the purpose of paragraph three of the statute. And we do have, you know, it's been undisputed, you signed the form that contains these selections of lower. He signed the second page. He signed the second page, Your Honor. But the first page that contains the rejection language. That's correct, Your Honor. Did he sign that page? He did not sign the first page, Your Honor. Right. But the boxes were checked. The boxes were checked on the first page. And is the testimony in the record that nobody knows how those boxes got checked? That's correct, Your Honor. Isn't that what he says? There's no, it hasn't been established. Nobody remembers who checked the actual boxes on the first page. But the president of the company says it wasn't him. Well, the agent, it was the agent, said it wasn't his signature, but he didn't check. There's an initial mention of the signatures there. And the question was whose signatures are those. And he said he didn't know. He assured us that those aren't my signatures. Right. So we have. Those are the initials, I'm sorry. And that's what I'm trying to understand is there has to be under both statutes some indication of rejection. Would you agree with that? Correct, Your Honor. Okay. So regardless of the statute, both statutes require evidence of rejection. Yes? Or selection, yes. Okay. So my question to you is if the president of the company didn't initial the rejection, how can you take the position that it's valid? How do you want to take? Because he signed the bottom and dated the bottom. There's evidence in the record that the agent didn't know what a step-down provision is, never explained it to Mr. Davis. Mr. Davis had no idea that he was buying that kind of policy. So. Well, to be fair, the evidence that he didn't remember is what the testimony was. Not necessarily that it didn't take place. But I believe what the agent said that this was his typical practice. He doesn't have a specific memory of this particular conversation. There wasn't a flat denial by the president of the company, Todd Davis, that he didn't sign this or he didn't agree to this. He just said he didn't remember is what his testimony was. And I think that goes back to the paragraph 3 of 14382. I think that's the whole purpose of that paragraph is that we don't have this situation where we're trying to figure out. I remember stuff that happened nine years ago. Why should we accept a form that has an initial next to the very rejection that's so important under the statute? Why should we accept an unknown individual as a rejection for Mr. Davis? Because. I mean, I understand what you're saying about the statute or, you know, without having to produce originals or anything else. But you're relying on somebody who is unknown to all the parties, aren't you? Well, I disagree. Because the. Well, who is the initial person? Initial? Yeah. We don't know. We don't know who it is. But we do know that Todd Davis signed the form. I mean, he's admitted that. I think the only problem. I mean, there would be no issue if this was a one-page form, if he had signed the bottom of it. The problem, I think, that arises is that it's in two pages. But it clearly says this is page 2 of 2 and this is page 1 of 2. And there's no, you know. And it's obviously a continuation of each other. If you read the text at the bottom of page 1, it continues on to the top of page 2. So this is. And there's nothing in the statute that says the form needs to be on one page. In fact, there's nothing in the statute that says what nature the form has to be. All it says is there has to be a brief description. And to select the coverage lower than the liability limit, which I believe is under paragraph 3 of that statute. This is the sufficient evidence. The legislature uses the word sufficient. This is sufficient evidence of administrative selection. So at least you agree with the court's finding that at the time the policy was originally issued, Todd Davis did not sign or initial the rejection of the million-dollar limit. You agree with that portion of the court's order? At the time the policy was issued, April 1, 2004, yes, Your Honor. And this is dated April 16, 2000. That's correct. And that's why. I mean, that's the importance of which version of the statute is incorporated into this policy. That's why I think that's what this case turns on. In my view, our position is that, you know, and discussed in the brief as well, is that whenever a policy is renewed, it's a whole new policy for purposes of incorporating the law as it exists at the time the policy is renewed. So in this case, this policy that potentially provided coverage to Mr. Worley was issued, I wasn't renewing it April 1, 2011. It was effective April 1, 2011, April 1, 2012. So what we can see is. So if the court finds that in 2004, when the policy was issued, that Davis and Sons did not initially make a valid rejection or selection of lower coverage limits, I'm reading from the order. If the court found that in 2004 they did not make a valid selection or rejection and your company followed the statute that you didn't need to keep advising them and just renewed the contract, then I get back to my original question. Why in 2011 are you entitled to a finding that it's applicable if it originally in 2004 was invalid? That's my question. Sure. I think what you have to do is, you know, based on the IPR opinion, you look at what the law is in 2000. You start the analysis looking at what the law is in 2011. That's the law that's incorporated in this particular policy. What the law said in 2011 is that the uninsured motorist coverage is required up to the liability limits unless it's rejected by the insurer as provided in paragraph 2 of this section. Now that wording, as provided in paragraph 2 of this section, was new. That was after the 2004 revision. So what, you know, taking this logically step-by-step, okay, let's look at the 2011 law. That's incorporated into our policy. It says that we would have to look at paragraph 2 to see whether it was rejected in accordance with the statute. Now paragraph 2 was amended after 2004. Paragraph 2 says that it eliminated, first of all, eliminated a distinction between named insurers and applicants. It says any named insurer could reject additional motorist coverage in excess of the limits, whereas the original statute or the pre-amendment statute said it had to be an applicant. That's why, you know, the original one, he wasn't an applicant at the time. He wasn't named insurer at the time. So we're looking at paragraph 2 of the existing statute. A named insurer may reject additional motorist coverage by making a written request for the limits, which are less than the policy limits, or reject the limits. In those cases where the insurer has elected to purchase limits of uninsured motorist coverage, which are less than the bodily injury liability limits, the insurer need not provide any renewal policy coverage in excess of that amount. So if you look through the statute, there's nothing in the 2011 statute that refers back to the prior version of the statute that said that, well, you have to, it has to be an applicant. It has to be in compliance with the statute as it was when the first policy was issued. If this form were signed. If the valid rejection, if it's an invalid rejection, does that make it an enforceable contract? It makes it an enforceable contract. Even though there's a material mistake, or would you not call that material? Well, I think what the courts have said, in these situations where a rejection is invalid for some reason, the remedy is what actually Mr. Gabb is asking for, a reformation of the policy. It doesn't, you know, invalidate the entire policy. Right, and that's what I'm asking. So if under 2004, when the contract was made, if in fact there was a material mistake, you would agree reformation is the remedy? If it actually occurred in 2004? Yes. I would have to agree with that. So the court has found that there was, at least under the 2004 statute when this was entered into, there was not a knowing rejection. Would you say that that's material fact under the statute that existed in 2004? I don't agree with that portion about the knowing rejection. I agree with the fact that it was not an outing at the time. Under the Lee v. John Deere case, they said that under the old version of the statute, the rejection has to be signed before the policy is issued. And that obviously didn't occur in this case. But, you know, I go back to my position is after the amendment, the legislature said, and based on the timing, it seemed to be a direct response to the Lee case. So that's not what we intended. So we're going to amend the statute to say that any named insured or an applicant can reject coverage. Do you think the new statute shifted the burden of rejection in any way? I don't think it shifted. No, I don't think it shifted the burden. I think it made it easier for an insurer to select coverage. And it's a less of a burden on the insurance company. Well, I think it more changed the procedure. Well, first of all, there was a change. It doesn't have to be part of the application. An insured can do it after the policy is issued, as was referred here. And there were the old statutes that had to be, there had to be a form or a blank next to the selection that needed to be initialed or signed. And that was done away with as well. And so what's left is there's really not much with regards to what needs to be, you know, the actual form. I think what they would do is relax what actually this form of this rejection or selection needs to be. It says it needs to be in writing, which we say it does. And there has to be a brief description, which, you know, we take the position there is. The trial court agreed with us on that. And it has to be explained, or there has to be an explanation in the form that the insured is given the option of selecting the coverage less liability limit. So even under the new statute, you have to have a brief explanation of what's going on in the policy. A brief description, that's correct, yeah. And why would that be required unless you were trying to make sure that the insured was making a knowing and voluntary rejection? Well, I mean, I. Isn't that implicit? I think that's the purpose of the statute. But the legislature chose how that was going to be done. I mean, the legislature didn't say we're going to look beyond the form, beyond the written evidence and find out if there really was a fact or if they remember there being a knowing and voluntary rejection. I think that's kind of the crux of our disagreement here, my disagreement with the trial court, is that the statute, I think, contemplated this kind of situation. It's like he said, she said, I don't remember, it's been so long. And again, I go back to the paragraph three where it says, look, the written selection, that's sufficient evidence. It doesn't say that's relevant evidence. It says that's sufficient evidence. There's nothing, there's no room in the statute to go beyond, you know, what's in the written, in the brief description or what's been selected or rejected. I can see my time is running out. Can I move to the second issue or? Yeah, I'm sorry. I'm dominating that, but I have a lot of questions. So go ahead. No problem. The second issue is the mobility of the step-down structure. The policy contained $500,000 UIN coverage for directors, officers, owners, partners, or family members, $40,000 for the payout security policy. As far as I'm concerned, this matter has already been settled under the State Farmers v. Farmers case in 2007, where they specifically said that this does not violate public policy, does not violate any statute of the week, you know, any portion of the insurance code. Insurance code later is amended to say, okay, this structure is not valid with regards to policies of private passenger automobile. But it limited that restriction to those categories of insurance policies, policies of private passenger automobile. And our position is that this clearly is not a policy of private passenger automobile as contemplated by the statute. And it cited several reasons in our brief, you know, the legislative history, how this statute wasn't, how this bill was represented to the legislature, when they voted on it, situations where the legislature has used more expansive language when it wanted to, where they... You can finish. Okay. Where they said that certain provisions apply to all motor vehicle policies as opposed to private passenger automobile. So I think that there's their choice in using this restrictive term of private policy of private passenger automobile is relevant in preserving the State Farmers v. Farmers holding with regards to these types of commercial policies. Thank you, counsel. Counsel? Good morning, Mr. Chairman. Please report. My name is Bill Gatton. I'm here on behalf of Mr. Worley. Your Honor, the questions that you have raised are answered by the decision of Lee v. John Deere Insurance Company. John Deere starts out with the statement that the statute that was in effect, there had to be strict compliance with that statute in order for there to be uninsured and underinsured limits less than the liability limits. So there had to be strict compliance. And that statute requires certain things. It requires a specific and express rejection, not a selection of different limits, but a rejection of higher, of limits equal to liability, as does the later amended statute, Your Honor. You asked the question, does that later amended statute require an express selection or rejection? And it does. Mr. Hassestad mentioned that there has to be a brief description. But it also requires that the insured or applicant be advised of their right to reject the coverage in excess of the minimum limits. And then in subparagraph 2, which was not referenced in the answers to your questions, it states that the applicant or the insured must make a written request for limits less than the liability limits. So both versions of the statutes, both versions of these statutes require an express decision by an applicant or insured to take limits less than the liability limits. So do you agree that whether this is the 2004 statute or the 2011, that argument, that the trial court kind of took that away by saying under any circumstance there was not a valid rejection, whether you look at 2004 or 2011? Do you agree with that? Yes, Your Honor, I do. And that's clear when we look at the evidence of the coverage form. It's not an application, which was required by the earlier statute. Remember, and that's what Lee says, the earlier statute requires this rejection to be in an application. The insurance company has stated in this case that there was no application. So right off the bat, they did not comply with the statute that was in effect at the time policy was issued. But in any event, if we look at this coverage form upon which the insurance company relies, the accurate evidence and the record shows that the printing in the blanks at the top are the agents, the insurance company agents printing. The initials by the side of the rejection, the evidence is not that we don't know who did that. The evidence is that these are the initials of an insurance company employee, and that appears in the record at C331 and 356. The evidence also is that none of the printing or markings on this first page where the rejection is, alleged rejection, is Mr. Davis's. And in fact, if we go down the form, the court will see there's more text following the rejection and above the signature on the second page that deals with other things, such as property damage insurance and discounts for driver's education for older drivers. So that's where the trial court was coming from. There is no evidence at all in this case, none, that the applicant, because first of all, it wasn't the applicant, but in any event, that Mr. Davis made a knowing rejection of these limits before the policy was issued. And Your Honor also hit on a very important point from the Lee case, which clearly and unequivocally holds that if that rejection is not validly accomplished before the policy is issued, it's invalid and it has no meaning. It has no effect and it's void. That's exactly what happened in Lee. They issued the policy. Then there was an alleged rejection that came later, just like this case. And the Supreme Court of Illinois, relying on Wood case, a case called Wood v. National Liability, reformed, reversed the appellate court and reinstated the trial court's decision, reforming the policy. That's exactly the case we have here. It doesn't make any sense for the insurance company to say that what didn't exist when the policy was issued somehow was created out of nothing when the policy was renewed after the statute was amended. If there was no valid knowing rejection, it can't be created by an amendment of a statute. The coverage form is also wrong and invalid because it's inaccurate. It refers—it is not an accurate description of the coverages because it is narrow in its description of to whom it applies. It says it applies to you, your family living with you, and other persons riding in your car. It uses the word car. The insurance company has gone to great lengths in the court below and in this proceedings to say Mr. Worley was not driving a car. He was driving a truck, as those words are commonly used in our day-to-day communication. And so if that's true, and even if the court found that that coverage form was effective, it was limited to the cars that were insured by this policy. This policy covered vehicles that we would commonly call cars and vehicles we would commonly call trucks. And the reason Federated has worked so hard to make that distinction is because if Mr. Worley was driving a car, then the statute that kicks in is 5143.13a, which came after the State Farm v. Farmers case and essentially abrogated that holding and said an insurance company may not limit coverages on the status of an insured person in a vehicle. And so if Mr. Worley was in a car, that statute applies. If he wasn't in a car, then the coverage form, even if it's valid, was limited to cars and not trucks. There's just no way this coverage form can act as a valid rejection of limits. We've also argued in our cross-appeal that determining the amount of insurance based on status is contrary to the public policy of Illinois, as found in this statute, 143.13a, as well as the Schultz case, which is a Supreme Court case, where an insurance company tried to make the definition of underinsured coverage more restrictive than uninsured coverage. And the Supreme Court stated very specifically and expressly in that case that it is not proper for an insurance company to limit coverages based on status. In the end, that's what we have here, is federated, took away Mr. Worley's insurance coverage based on his status without the principles of the company even knowing it. That's the evidence. Mr. Davis testified, I did not know about these step-down limits until after the collision. Are there any questions? I don't believe so, Judge. Thank you, sir. Thank you. Counsel? I'd just like to address a couple of things. As far as the brief description, the cross-court found that the description was adequate. I think from my understanding of Mr. Davis' argument is that his complaint about the brief description is that it didn't explain everything about the coverage, the UIA coverage. It doesn't say that it only applies if you're riding in a car. It just gives that as a general description of what the underinsured coverage is. And the one case that I found that touches on the opinion or touches on what is adequate for a brief description is American Services versus ISOPOP. In that case, the brief description merely said that uninsured motorist bodily injury coverage, which doesn't mention underinsured, provides bodily injury protection up to the selected limit for injuries in an accident caused by another motorist who is not covered by any bodily injury liability policy or who is insured with such coverage as I have, but compensated for the injury sustained. Of course, that was not the case. That was a brief description in the court's statute. Our description is more detailed than that. It doesn't provide the entire policy, but the statute doesn't say you have to lay out the entire policy language in the brief description. Mr. Hasenstab, what about Mr. Gavin's argument that the statute uses the word application and you have provided something called Illinois commercial auto coverage option form? Is this an application or is this more like a declaration sheet or is this something in between? It's an issue, to be honest with you, Your Honor. It's not an application. It's not an application. And like I said, I read Lee v. John Deere. I agree with his analysis. Under Lee v. John Deere, since this was not part of the application, this would not be sufficient under the pre-2004 statute. But under the amendment, he says that we're trying to cure something, and it can't be cured by an amendment to the statute. But that, I mean, yes, it can. Because in 2000, we have to look at policy that exists since 2011. And in 2011, you know, as I've mentioned over and over what Eichert says, every time the policy is renewed, we incorporate the language of the statute as it exists at that time. In 2011, they eliminated the need for an applicant to sign this. It said that any time a named insurer has chosen or has selected coverage less than liability limits, that coverage does not have to be offered anymore. So, you know, and we've discussed whether this form is sufficient, and I don't know what the position is. Obviously, we can get some other opinions on that. I do want to touch on the Shultz case, because it goes to the second issue. The Shultz case is a very old injury. It was limited to the question of whether someone could be an insurer for purposes of UM coverage, but not UI coverage. And in Shultz, there's nothing in Shultz that says that we're going to overrule the State Farm versus Farmers Insurance case. In fact, if you read the State Farm versus Farmers Insurance case in detail, this question about omnibus coverage for permissive users was pretty much already settled off in that. And the court specifically distinguished the State Farm versus Farmers. This is not a situation where we're saying that – this is not a situation where coverage is being eliminated for permissive users. It's saying this is a situation where they're offering different levels of coverage for different categories of insurers. The court was very careful to make that distinction, the State Farm versus Farmers. And what they said is, well, the statute says you can't eliminate permissive users entirely, but it doesn't say anything about saying you can't do separate limits for these different types of insurers. And the theme of it is that we're going to do what the legislature says, and we're not going to expand on that. We looked at the statute, and that's what the legislature said at the time. And after the statute was amended, you know, they limited the policy to five passenger automobiles, and that's what the legislature intended, to limit this restriction to those types of policies. And there was nothing in the Shultz case, nothing in the State Farm versus Farmers, that indicated that the court wasn't in court. So the path was to take the language more than the legislature's intent to expand that restriction any further. Thank you, Your Honor. Thank you, Counsel. We appreciate the briefs and arguments of both counsel. We'll take the case under advisement. The court will be in a short recess and resume oral arguments at 5 o'clock. All rise.